**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
──────────────────────────────

**TROY PHILLIPS,**

                                **Plaintiff,**

       **vs.**                                          **COMPLAINT**

**ORLEANS COUNTY**                                 **Case No.1:18-cv-00752**
**and**
**CIVIL SERVICE EMPLOYEES ASSOCIATION**
**LOCAL 1000**
**and**
**CHARLES NESBITT (in his individual capacity).**
                                       **Defendants.**

──────────────────────────────

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues triable of right by jury.

Plaintiff **TROY PHILLIPS** ("Mr. Phillips" or "Plaintiff"), through his attorneys Hall Law Firm PLLC, brings this action in his individual capacity, to redress racial discrimination in promotion and pay, a hostile workplace resulting from racial discrimination, and claims of retaliation for protected activities. Upon non-confidential, non-privileged information concerning his employment with Defendant Orleans County, and upon information and belief, Plaintiff alleges as follows:

## I. INTRODUCTION

**Plaintiff TROY PHILLIPS** was employed by **Defendant ORLEANS COUNTY** from September 2006 to January 2015 when he was discharged for repeatedly reporting illegal, racially

discriminatory and harassing conduct by his co-workers. Plaintiff was the only skilled trades

person of color employed by the County at the time of his discharge, and was continually

recognized as a superior employee, receiving awards for exemplary service including "Employee

of the Year." Prior to his discharge, Plaintiff Phillips had never been disciplined by his employer.

Plaintiff was routinely required to perform work above his job classification, but was

denied appropriate pay as required by the collective bargaining agreement. Caucasian employees

performing the same duties were paid commensurate with those duties as outlined in the

collective bargaining agreement.  Plaintiff was also denied promotions, notwithstanding having

met all tests and qualifications for the higher position, and despite being continually promised

promotion by his supervisor.

During the course of plaintiff's employment he was continually subjected to racial slurs

including being called a "nigger"; he was also subjected to racial photos depicting African

Americans, including former President Obama, as monkeys. A common refrain by Caucasian co-

workers in response to an unpleasant assignment was to declare "I'm not a nigger," and "this is

nigger's work." After having attempted to explain to co-workers that their behavior was

discriminatory and harmful, plaintiff began to report these behaviors to management, Thereafter,

Plaintiff Phillips was was ostracized by his Caucasian co-workers and supervisors.

After repeated reports to his supervisors including Gerald Gray, Highway Superintendent,

Jim Noreck, and Mike Cliff, resulted in no action, plaintiff sought the intervention of Charles H.

Nesbitt, Jr., Chief Administrative Officer of Orleans County. Mr. Nesbitt talked to at least one

Caucasian co-worker, Duane Scott Dugan (hereinafter referred to as "Scott Dugan." or "Dugan"),

during which plaintiff's accusations were found to be credible. Thereafter, a brief "diversity session" was conducted as a result of plaintiff informing Mr. Nesbitt that he would seek the intervention of the Equal Employment Opportunity Commission if action was not taken.

Following the short diversity session, plaintiff's supervisors refused to speak to him, except to deliver brief work assignments using a terse and intimidating conversational style. Gerry Gray told plaintiff that because he had gone over the heads of himself, as well as the other supervisors by reporting the racial harassment to Nesbitt, he would now suffer the consequences. Subsequent to the short diversity session, plaintiff's co-workers would gather in tight groups, hurling racial epithets at plaintiff, as well as making comments like "watch out or we will have to go to training again." Plaintiff was refused assistance by many of his co-workers, in addition to the racial harassment, making his job duties much more difficult to complete on a timely basis.

Retaliatory conduct, including demeaning comments by co-workers, refusal of plaintiff's supervisors to provide guidance and assistance to plaintiff in the performance of his duties, and being required to work out of classification without proper pay, became commonplace. Plaintiff continued to complain of disparate treatment and intentional racial harassment to Supervisors Gray, Noreck and Cliff, who would turn their backs on him and walk away. In a desperate attempt to get management to intervene, plaintiff approached Supervisor Cliff away from work and pleaded with him to take action to end the harassment and retaliation he was being subjected to on the job. Cliff told plaintiff, in the presence of at least one witness, that there was nothing he could do to stop the illegal treatment of plaintiff. After plaintiff walked away in despair, Cliff was counseled by an employee of another company, who had recently gone through anti-discrimination training, that management was required to take prompt, remedial action.

Despite plaintiff's continuing demands for management to take action, the hostile work environment grew worse and plaintiff was subjected to even greater disparate treatment until his termination for the same alleged infractions for which his Caucasian co-worker received a five day suspension. Defendant based the disparate treatment on an alleged comment made by Plaintiff during the faux investigation into the pretextual charges used to terminate him.

After his discharge, plaintiff attempted to file a grievance alleging that his termination was not for proper cause, but instead was in retaliation for his reports of illegal employment discrimination. His union, the Civil Service Employees Association Local 1000 (hereinafter "CSEA"), refused to properly process his grievance and attempted to reduce the amount of an offer to resign previously authorized by the employer. Instead, and as the United States Equal Employment Opportunity Commission found, plaintiff was given a settlement offer which did not meet the minimum requirements of the Older Workers Benefit and Protection Act. Plaintiff was given less than five minutes to sign the agreement which his union representative first presented to him at this final, five minute meeting. Further plaintiff was warned that if he chose to have the agreement reviewed by an attorney, the CSEA no longer represent him.

## II. JURISDICTION AND VENUE.

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), et seq., as amended ("Title VII") to redress and enjoin employment practices of defendant in violation of these federal statutes, the Civil Rights Act of 1866, 42 U.S.C. 1981, and 42 U.S.C. § 1983 .

2.      Further the Court has jurisdiction to adjudicate state claims under 28 U.S.C. §1367,

arising under The New York State Executive Law Article 15, §290 et. seq., Human

Rights Law ("NYSHRL").

3.      Venue is proper in the Western District of New York under 28 U.S.C. §§ 1391(b) & (c)

and 42 U.S.C. § 2000e-5(f) because a substantial part of the wrongful conduct

complained of herein occurred in this District, Defendant Orlean County and the CSEA

transact substantial business in this District; and Defendant Orleans County maintains

employment records related to this action in New York.

4.      Plaintiff has exhausted his administrative remedies and complied with the statutory

prerequisites of Title VII by filing charges with the Equal Employment Opportunity

Commission alleging race discrimination and retaliation.

5.      On April 25, 2018, the EEOC issued a "right to sue" letter as to Orleans County.

## III.  PARTIES

### Plaintiff Troy Phillips

6.      Plaintiff Troy Phillips is an African American male.

7.      Plaintiff Phillips is over 40 years of age, having been born on January 18, 1968.

8.      Plaintiff is a veteran of the United States Navy.

9.      Plaintiff resides at 42 North Liberty Street, Albion, New York 14411.

10.     Plaintiff's phone number is (585) 590-2224.

11.     From approximately September 2006 to January 2015, plaintiff was employed by Orleans County.

12.     In his last position with Orleans County, plaintiff was a Building Maintenance Worker in the Highway Department, Grounds and Maintenance Group.

**Defendant Orleans County**

13.     Defendant Orleans County ("the County" or "Employer") is a municipal corporation, located in the County of Orleans, State of New York.

14.     Charles Nesbitt is now, and has been at all times relevant to this Complaint, the Chief Administrative Officer of Orleans County.

15.     At all times relevant to this complaint, Gerald Gray was an employee of the Orleans County Building and Grounds Department and functioned as its superintendent.

16.     The Orleans County Building and Grounds Department is located at 225 West Academy St., Albion, NY 14411. The Orleans County Building and Grounds Department phone numbers are: Highway Phone-(585) 589-6145, Building and Grounds Phone- (585) 589-7016, Fax-(585) 589-1620

17.     James Noreck, at all times relevant to this complaint, was a supervisor in the Orleans County Building and Grounds Department.

18.     Michael Cliff, at all times relevant to this Complaint, was a supervisor in the Orleans County Building and Grounds Department.

**Civil Service Employees Association**

19.     The Civil Service Employees Association is a labor organization which represents some employees of Orleans County, including Plaintiff Phillips.

20.     CSEA Headquarters is located at  143 Washington Avenue,  Albany, NY 12210 and whose phone number is (518)-257-1000,

21.     Plaintiff Phillips is a member of CSEA Western Region whose offices are located at  120 Pineview Drive,  Amherst N.Y. 14228 and whose phone number is 716-691-6555

## IV.  ALLEGATIONS

22.     Plaintiff was subjected to a racially hostile environment based on race for much of the time he was employed by the County, as a result of racial taunts, disparate treatment as to pay and assignments, and failure of County management to prevent such illegal employment actions in a prompt and effective manner.

23.     Plaintiff was subjected to his co-workers making  racist comments such as calling him a "nigger," refusing job assignments by claiming such assignments were "niggers' work," and portraying African Americans, including former President Obama, as monkeys.

24.     Finally, in 2012 plaintiff reported illegal co-worker racial harassment to Building and Grounds Superintendent Gerald Gray.

25.     In 2012 when plaintiff first reported racial harassment to Superintendent Gray, he asked Mr. Gray to take action to prevent future occurrences of harassment by his co-workers.

26.     Superintendent Gray took no action.

27.     The harassment continued and plaintiff continued to report the illegal conduct to
        Superintendent Gray over the next two years.

28.     During the period of 2012 through 2014, plaintiff also reported the ongoing racial
        harassment to supervisors James Noreck and Michael Cliff.

29.     In 2014 the harassment not only continued, but increased, in both frequency and intensity.

30.     During 2014 plaintiff's co-workers would pass pictures of then President Barrack
        Obama's head affixed to a monkey's body between themselves, while pointing to, and
        laughing at, plaintiff.

31.     During the years of plaintiff's employment with the County, co-workers would routinely
        object to work assignments which they believed were below their perceived level of
        worth by exclaiming that they were "not niggers," and that they didn't do "nigger work."

32.     After such racist protestations, those tasks would often be reassigned to Plaintiff Phillips.

33.     Finally, during the early summer months of 2014, and only after Superintendent Gray and
        supervisors Noreck and Cliff refused to respond to plaintiff's reports of ongoing racial
        harassment, Plaintiff Phillips sought out the assistance of County Chief Administrative
        Officer Charles Nesbitt.

34.     Plaintiff Phillips, who had repeatedly provided Superintendent Gray and supervisors
        Noreck and Cliff with specific incidents of racial harassment at the time of those
        occurrences of racial harassment, was questioned, in an interrogation style, as to dates,
        names and places of each incident by Charles Nesbitt.

35.     Plaintiff Phillips told Charles Nesbitt that the harassment was ongoing, that it had become

routine and was carried out by his co-workers at the Building and Grounds Department, and that Gray, Noreck and Cliff had the dates and specifics of many of the individual incidents.

36.     Plaintiff Phillips, who had been threatened with union imposed discipline by the CSEA prior to the meeting with Nesbitt if he implicated his fellow union members, referred the County's Chief Administrator to Gray, Noreck and Cliff for exact dates of the ongoing incidents of harassment.

37.     After the meeting with Chief Administrator Nesbitt, plaintiff and his co-workers attended a brief "diversity" meeting.

38.     After the meeting with Chief Administrator Nesbitt and the diversity meeting which followed, plaintiff's working conditions became intolerable.

39.     Subsequent to the diversity training, some of plaintiff's Caucasian co-workers continued their racist behaviors, including racial slurs, walking out of the room when plaintiff would enter exclaiming "careful or we will have to go to training again," and hurling comments such as "monkey" at Plaintiff Phillips.

40.     Plaintiff often heard repugnant comments based on his race from groups of Caucasian male employees who would shield the speaker by huddling in groups while hurling racial slurs, including "monkey" and "nigger."

41.     Plaintiff's tools and other equipment would be removed from his tool storage area and thereafter be unavailable to him.

42.     Plaintiff's co-workers would refuse to assist him in his daily tasks.

43.     Plaintiff's co-workers would refuse to speak with him and laughingly state to each other to "be careful or we will get pulled into another diversity meeting."

44.     Plaintiff clearly understood that his co-workers were mocking the meeting and the failure of his supervisors to take prompt remedial action based on his complaints.

45.     Plaintiff's supervisors refused to speak to him, except to give him terse, work orders.

46.     During 2014 Plaintiff Phillips sought out Superintendent Gray and asked why he was being treated so harshly by the management group, including Gray, Noreck and Cliff.

47.     Superintendent Gray responded that Plaintiff Phillips had "gone over our heads" by reporting the racial harassment to Charles Nesbitt and would now "pay the price."

48.     The atmosphere became so toxic that one of plaintiff's Caucasian co-workers, Matthew Herman, called Flo Tripi, CSEA Western Region President, on several occasions asking that the Union intervene to stop the racist actions of other Caucasian co-workers, who were also her members.

49.     Ms. Tripi never contacted plaintiff, nor did she take any actions to stop the racial harassment.

50.     However, after Mr. Herman's requests that the CSEA take action to prevent the harassment of one of their members, Mr. Herman became the victim of the County's and the CSEA's retaliatory actions.

51.     Upon information and belief, one of the leaders of the group exhibiting racially harassing conduct, Burt Mathes, is from a family of well connected business persons and politicians in Orleans County.

52.     Upon information and belief, Nesbitt and other County management employees were
        intimidated by Burt Mathes, and his family's political power, and for that reason refused
        to take corrective action to prevent the ongoing harassment.

53.     In desperation, and in the hope that his supervisor, Michael Cliff, would listen to his
        complaints of racial harassment if out of sight of Superintendent Gray, plaintiff decided
        to seek out Cliff outside of work.

54.     During November 2014, Plaintiff Phillips found Supervisor Cliff at a local restaurant and
        again pleaded with Cliff to take action to stop the harassment.

55.     Plaintiff went on to again recite to Supervisor Cliff the numerous recent acts of racial
        harassment directed at him during working hours by his co-workers, including co-workers
        calling him a "nigger," having his tools taken, and being assigned tasks his co-workers
        refused as "nigger work."

56.     Supervisor Cliff told plaintiff, "There is nothing that can be done."

57.     Plaintiff respectfully walked away upon hearing Supervisor Cliff's pronouncement that
        the County would take no action.

58.     Milton Scurry, who had accompanied Plaintiff Phillips to the restaurant, overheard the
        conversation with Supervisor Cliff and attempted to intervene on plaintiff's behalf.

59.     Milton Scurry told Supervisor Cliff that Scurry had just been through harassment training
        at his own company, and that based on that training Mr. Cliff and the County had a legal
        obligation to take action to stop the racial harassment.

60.     Supervisor Cliff, while admitting to Mr. Scurry that the harassment was ongoing, told Mr.

Scurry that nothing could be done to stop the ongoing harassment and that plaintiff must ignore the harassing conduct if Plaintiff Phillips wished to maintain his position with the County.

61.     After the off-site discussion with Supervisor Cliff, and for the first time in his career with the County, plaintiff was being continually surveilled, and his work questioned.

62.     In the two years and one-half year period prior to his discharge, Mr. Phillips was formally recognized by the County for the quality of his work.

63.     During June 2013 Orleans County Jail Superintendent Scott Wilson recognized plaintiff for "exemplary work."

64.     Superintendent Wilson formally recognized plaintiff for  interacting "exceptionally well with the Orleans County Jail's Administration," going "above and beyond the scope of his duties," with an understanding of the "time sensitivity" of keeping the jail's systems running well, and concluding with his written praise by stating, "I expressed to the Orleans County Legislators that many of the preexisting maintenance problems have been corrected as a direct result of Mr. Phillips' exemplary work."

65.     Plaintiff Phillips was selected as "Employee of the Month" for June 2013.

66.     Plaintiff Phillips was nominated as "Employee of the Year" for 2013 by the Chairman of the Orleans County Legislature.

67.     Plaintiff Phillips was selected as "Employee of the Month" for February 2014.

68.     Plaintiff Phillips was given a "Certificate of Appreciation" for "excellence in workmanship and dedication in completing the Orleans County Jail surveillance system" in February 2014.

69.     Thereafter, one year after being awarded the honor of "Employee of the Year," months
        after his last award for "Employee of the Month," and never having been disciplined
        during his more than eight years with the County, Plaintiff was terminated.

70.     Defendant's stated reasons for terminating Plaintiff Phillips were a pretext for illegal
        retaliation, resulting from Plaintiff's ongoing reports of racial harassment and complaints
        of  management's refusal to take prompt, effective remedial actions to prevent such
        harassment.

**Disparate Treatment**

71.     Plaintiff was continually required to work above his classification for extended periods,
        but was not paid at the rate commensurate with those duties.

72.     Defendant was contractually obligated, as set forth in the collective bargaining agreement
        between the CSEA and the County, to upgrade plaintiff for time worked on a long-term
        basis, performing the duties encompassed by a higher rated classification.

73.     Despite being required to continually work above his classification, having met all tests
        and qualifications for the higher position, and having been told by Superintendent Gray
        that he would be promoted to that higher classification, Plaintiff was denied promotion
        through the time of his termination.

74.     Caucasian employees performing the same duties were paid commensurate with those
        duties as outlined in the collective bargaining agreement.

75.     When unpleasant tasks were assigned to white co-workers they would respond by saying
        they were "not niggers" indicating that the work was beneath them.

76.     After Caucasian co-workers refused work as being for "niggers,"  Plaintiff was assigned

those tasks.

77.    Plaintiff complained of the reassignments based on his race to his supervisors including
       Gerald Gray, Highway Superintendent, Jim Noreck, and Mike Cliff.

78.    Nonetheless, Gray, Noreck and Cliff continued to assign and reassign a disproportionate
       share of the most difficult or unpleasant tasks to Plaintiff after Caucasian employees
       refused to perform those tasks.

79.    On the day of his discharge, plaintiff's co-worker Scott Dugan, a Caucasian male, was
       issued a short suspension based on the same allegations that resulted in Plaintiff's
       termination, with the sole exception that plaintiff allegedly cursed at Superintendent
       Gray, the same man who had been retaliating against him since plaintiff went "above"
       him to County Administrator Nesbitt.

80.    Plaintiff contested the pretextual charges brought by the County which resulted in his
       discharge by filing a grievance with his Union.

**Defendant's Orleans County's Waiver**

81.    After Plaintiff Troy Phillips was terminated, he called Cindy Troy, President of Civil
       Service Employees Association Local 1000.

82.    Ms. Troy met with Plaintiff Troy Phillips in a broom closet for ten minutes or less.

83.    Ms. Troy refused to allow Plaintiff Phillips  to assert that he was terminated for retaliation
       as a result of complaining to Orleans County of race based discrimination and
       harassment.

84.    Instead Ms. Troy told plaintiff that illegal discrimination was not the basis for his

discharge and told him that the Union would not investigate his stated reason for discharge.

85.     Ms. Troy abruptly ended the broom closet meeting and told plaintiff that she would schedule a meeting, "shortly."

86.     Within a few days plaintiff met with Ms. Troy, her union supervisor and his partner, Peggy Thomas..

87.     At this subsequent meeting, Defendant Orleans County, by and through their agent Civil Service Employees Association (hereinafter "CSEA"), intimidated plaintiff int agreeing to sign a waiver of his rights to sue.

88.     At this meeting CSEA threatened plaintiff if he was to consult with a private attorney.

89.     Defendant Orleans County, through their agent CSEA, met with plaintiff on this occasion for less than thirty  minutes, to compel Plaintiff to agree to waive his claim to arbitrate.

90.     During this meeting Defendant Orleans County's agent CSEA, told plaintiff they would not commit to arbitrating his discharge and refused to investigate his allegations of race based employment discrimination and retaliation.

91.     During this meeting Defendant's agent CSEA told plaintiff that even if they did agree to arbitrate his discharge, he would likely not prevail.

92.     The CSEA evaluated plaintiff's grievance and stated reason for discharge, e.g., retaliation for reporting racial discrimination, without investigation.

93.     Defendant's agent CSEA entered this meeting with plaintiff with authority from their Principal, Orleans County, to offer Plaintiff at least $17,500.

94.     Despite prior authorization from CSEA's prinicipal Orleans County, CSEA offered plaintiff less than $10,000.

95.     Plaintiff had been forewarned by a fellow employee that CSEA had been authorized by the County to offer $17,500 and so informed the County's agent, CSEA.

96.     The County's agent, CSEA, demanded to know how Plaintiff had learned of the amount they were authorized to offer, but Plaintiff refused to disclose his source.

97.     Immediately thereafter, County agent CSEA raised the offer to $17,500 but demanded an immediate answer from plaintiff.

98.     Within approximately three days plaintiff was summoned to a meeting with Ms. Troy.

99.     Plaintiff, his confidence shaken by the County agent CSEA's attempt to minimize the cost to their principal Orleans County, asked for time to speak with an outside attorney.

100.    Defendant's Principal, CSEA, informed plaintiff that if he spoke to outside counsel, they would no longer "represent" him.

101.    Plaintiff, lacking in business acumen and experience, and intimidated by Orleans County's agent CSEA, accepted the "take it or leave it" offer.

102.    This meeting lasted less than 5 minutes.

103.    The written agreement presented by the CSEA required plaintiff to waive all claims, arising from statute or contract.

104.    Plaintiff had only minutes to review the proposed agreement, which he saw for the first time at this final meeting, and sign it.

105.    The written agreement presented to plaintiff by the CSEA did not meet the requirements

of the Older Workers Benefit Protection Act of 1990 (OWBPA) 61 FR 13793,  which

amended the Age Discrimination in Employment Act of 1967. 29 U.S.C. § 623;  29 CFR

§ 1625.22.

106.    By letter to Defendant Orleans County on March 17, 2017,  plaintiff offered full

repayment of the amount tendered to him at the time of signing the defective separation

agreement.

107.    In response, Defendant Orleans County, through their attorney, informed plaintiff by

letter of April 3, 2017, "We will not be providing you with the requested accounting, nor

will we accept a tender Back payment."

108.    Thereafter, plaintiff deposited an amount in excess of $20,000 in his attorney's escrow

account.

109.    As a result of the written agreement's failure to meet the requirements of the OWBPA,

the United States Equal Employment Opportunity Commission found probable cause to

conclude that Orleans County's waiver was both defective and non-binding.

## V.  CLAIMS

### COUNT  I - AS TO ORLEANS COUNTY

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-, ET SEQ.

### HOSTILE WORK ENVIRONMENT - RACE

110.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in

the previous paragraphs, as well as subsequent paragraphs of this Complaint, as though

fully set forth herein.

111.    Plaintiff was subjected to ongoing racial harassment by co-workers.

112.    Despite plaintiff's reports of ongoing intentional racial harassment, intentional disparate treatment, and hostile workplace claims, management did not take appropriate action to rectify plaintiff's co-workers' illegal behaviors and actions.

113.    Instead of taking prompt, effective, remedial action to prevent the ongoing co-worker harassment, Orleans County engaged in conduct which itself constitutes intention racial discrimination such as requiring plaintiff to perform taks which Caucasian employees refused as "nigger work, " refusing to abide by the compensation requirements as set forth in the collective bargaining agreement, refusing to promote plaintiff after committing to do so, intimidating plaintiff through inappropriate observations and hostile interpersonal work related conversations and encouraging plaintiff's co-workers to continue to engage in racist behaviors by refusing to take appropriate corrective actions to prevent such continuing illegal discriminatory acts.

114.    Defendant Orleans County's refusal to take appropriate actions to prevent the ongoing harassment, of which they had been advised over a period of years, also constitutes intentional discrimination.

115.    As a result of Defendant Orleans County's refusal to take timely, appropriate, remedial action, and thereafter terminating Plaintiff Troy Phillips, plaintiff has suffered emotional distress and psychological damage, his character and standing in his community have suffered, and he has lost/continues to lose the past, present and future income and benefits of his position with Defendant Orleans County.

**COUNT II - AS TO ORLEANS COUNTY**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-, ET SEQ.**

**DISPARATE TREATMENT - RACE**

116.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs, as well as subsequent paragraphs of this Complaint, as though fully set forth herein.

117.    Plaintiff was required to work out of his classification by the County in violation of the Collective Bargaining Agreement between the CSEA and Orleans County.

118.    Plaintiff was subjected to hostile working conditions, including racist characterizations of African American as "monkeys" and "niggers" while Caucasian employees were not subjected to a hostile work environment.

119.    While working out of his classification, plaintiff was not paid at the rate of the classification commensurate with the level of work negotiated between the Union and the County as set forth in the collective bargaining agreement then in effect between the parties.

120.    Caucasian employees were paid at the appropriate rate for work performed as set forth in the collective bargaining agreement between the Union and the County.

121.    Plaintiff was required to perform work which Caucasian employees refused to perform, as such Caucasian employees claimed they were "not niggers" and such assignments should be assigned to "niggers."

122.    Plaintiff's Caucasia co-worker, Scott Dugan, was given a five day disciplinary suspension for comparable alleged violations of County policies.

123.    As a result of Defendant Orleans County's disparate treatment of plaintiff, he has suffered emotional distress and psychological damage, his character and standing in his community have suffered, and he has lost/continues to lose the past, present and future income and benefits of his position with Defendant Orleans County.

## COUNT III - AS TO ORLEANS COUNTY

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-5(f), ET SEQ.**
**RETALIATION**

124.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs, as well as subsequent paragraphs of this Complaint, as though fully set forth herein.

125.    Plaintiff engaged in protected activity by bringing the conduct of co-workers which constituted racial discrimination—including but not limited to, denial of opportunities for advancement, derogatory remarks based on race, and racial harassment—to County employees in appropriate  management positions including Geral Gray - Highway Superintendent, Jim Noreck and Mike Cliff - supervisors.

126.    Plaintiff also notified Charles H. Nesbitt, Jr., Chief Administrative Officer of Orleans County of the ongoing racial harassment.

127.    Despite adequate notification to Defendant Orleans County, the racial harassment and hostile work environment continued.

128.    Defendants were aware of the ongoing race based harassment and failed to take prompt, remedial action to prevent it.

129.   After bringing his demands that Orleans County and the CSEA prevent the illegal employment discrimination, plaintiff, who had a sterling work record, including several awards recognizing him as an outstanding employee, was terminated.

130.   Plaintiff's termination was the result of his complaints of racial harassment.

131.   Plaintiff's terms and conditions of employment were inferior to his Caucasian co-workers since he was assigned duties Caucasians refused to perform, was compensated at a lesser rate and refused promotion, and suffered disparate discipline for similar offenses such as the discipline imposed on his Caucasian co-worker, Scott Dugan.

132.   Plaintiff's terms and conditions of employment were negatively affected after filing his charges of illegal employment discrimination with the County and the CSEA in 2014.

133.   As a result of Defendant Orleans County's refusal to take timely, appropriate, remedial action, and thereafter terminating Plaintiff Troy Phillips, plaintiff has suffered emotional distress and psychological damage, his character and standing in his community have suffered, and he has lost/continues to lose, the past, present and future income and benefits of his position with Defendant Orleans County.

**COUNT IV**

**AS TO THE CIVIL SERVICE EMPLOYEES ASSOCIATION - LOCAL 1000**

**VIOLATION OF THE SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866**

134.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs, as well as subsequent paragraphs of this Complaint, as though fully set forth herein.

135.    Defendant unlawfully interfered with plaintiff's right to make and enforce contracts as to his pay  and working conditions based on his race.

136.    Defendants unlawfully interfered with plaintiff's right to make and enforce contracts as to his promotional opportunities, based on his race.

137.    Defendants has discriminated against plaintiff in terms of his employment, which is governed by the collective bargaining agreement and state and federal statutes prohibiting discrimination based on race, by unlawfully terminating plaintiff based on his race.

138.    Defendant refused to investigate and process plaintiff's grievance after his discharge because to do so would have implicated their Caucasian members in illegal race based discrimination.

139.    Defendant attempted to minimize plaintiff's settlement offer from co-defendant Orleans County in violation of their duty of fair representation. Defendant CSEA's actions were in retaliation for plaintiff implicating the CSEA's white members who had engaged in racial discrimination.

140.    Defendant refused to properly represent defendant's co-worker Matthew Herman who attempted to compel defendant CSEA to utilize the dispute resolution procedures negotiated with co-defendant Orleans County to prevent racial discrimination.

141.    As a result of Defendant Civil Service Employees Association's refusal to take timely, appropriate, remedial action, to enforce the contract between the CSEA and Orleans County on the same basis as for Caucasians and thereafter failing to process Plaintiff Troy Phillips' grievance on the same basis as Caucasians, plaintiff has suffered emotional distress and psychological damage, his character and standing in his community have suffered, and he has lost/continues to lose, the past, present and future income and

benefits of his position with Defendant Orleans County.

## COUNT V

## INTENTIONAL DISCRIMINATION

## (42 U.S.C. 1983 and Title VII of the Civil Rights Act of 1964)

## CHARLES NESBITT in his individual capacity.

142. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs, as well as subsequent paragraphs of this Complaint, as though fully set forth herein.

143. Section 1983 states in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

144. As set forth above, Defendant Charles Nesbitt, acting under color of statute, deprived plaintiff of his rights to be free of intentional discrimination, engaged in deliberate indifference to plaintiff's continuing complaints of a racially offensive work environment, and discharged plaintiff in retaliation for asserting his right to be free of a racially offensive hostile work environment.

145. Upon information and belief, Chief Administrative Officer, Charles Nesbitt ordered his subordinates, including Supervisor Michael Cliff, to retaliate against plaintiff for raising issues of racial harassment and discrimination.

146. Upon information and belief, Charles Nesbitt ordered the discharge of Supervisor Cliff for attempting to properly discipline employee Scott Dugan who was considered to be an

important witness in support of Nesbitt's actions against plaintiff.

147.    Relying on a pretext for the discharge of plaintiff, Charles Nesbitt harmed plaintiff's good name and reputation.

148.    These same false accusations deprive plaintiff of his future ability to secure comparable employment.

149.    Defendant Charles Nesbitt engaged in deliberate indifference to plaintiff's pleas for the County to intervene and prevent future discrimination which constitutes intentional discrimination.

150.    Defendant Charles Nesbitt, utilizing the power of his position as Chief Administrative Officer for Orleans County, conspired with the Civil Service Employees Association to deprive plaintiff of his employment

151.     Defendant Charles Nesbitt, utilizing the power of his position as Chief Administrative Officer for Orleans County, conspired with the Civil Service Employees Association to deprive plaintiff's due process rights as set forth in the colective bargaining agreement between the Civil Service Employees Association and Orleans County.

152.    As a result of Charles Nesbitt abuse of the powers of the position of Chief Administrative Officer of Orleans County, plaintiff suffered emotional distress and psychological damage, his character and standing in his community have suffered, and he has lost/continues to lose, the past, present and future income and benefits of his position with Defendant Orleans County.

**COUNT VI - AS TO ORLEANS COUNTY**

**AGE DISCRIMINATION IN EMPLOYMENT ACT of 1967 (29 U.S.C. § 621 et seq.)**

**(Older Workers Benefit Protection Act)**

153.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs, as well as subsequent paragraphs of this Complaint, as though fully set forth herein.

154.    Defendants engaged in disparate discipline and discharge of plaintiff, while disciplining his younger, Caucasian co-worker, Scott Dugan, by imposing a five day time-off penalty for essentially the same alleged conduct.

155.    Defendant failed to provide proper notification to Plaintiff Troy Phillips by their failure to inform plaintiff of his right to a twenty-one (21) day review period with respect to the termination agreement Defendant Orleans County authored and forced upon plaintiff through their agent, Civil Service Employee Association, Local 1000.

156.    Defendant failed to provide proper notification to Plaintiff Troy Phillips by their failure to inform plaintiff of his right to a seven (7) day revocation period after plaintiff signed defendant's separation agreement.

157.    Defendant Orleans County failed to provide proper notification to Plaintiff Troy Phillips by their failure to inform plaintiff of his right to have an attorney review defendant's separation agreement, prior to plaintiff signing such agreement.

158.    By virtue of defendant's failure to notify Plaintiff Troy Phillips, in writing, of his rights as set forth above, and as provided in the Older Workers' Benefit and Protection Act, defendant deprived plaintiff of his legal rights.

159.   By virtue of defendant's failure to notify Plaintiff Troy Phillips, in writing, of his rights as set forth above, and as provided in the Older Workers' Benefit and Protection Act, defendant deprived plaintiff of his contractual rights to consider his option of arbitrating his discharge.

160.   As a result of Defendant Orleans County's refusal to provide Plaintiff Troy Phillips with his statutory rights under the Older Workers' Benefit and Protection Act, and thereafter terminating Plaintiff Troy Phillips, plaintiff has suffered emotional distress and psychological damage, his character and standing in his community have suffered, and he has lost/continues to lose, the past, present and future income and benefits of his position with Defendant Orleans County.

161.   As a result of Defendant Orleans County's violation of the Older Workers Benefit and Protection Act, the agreement should be voided, affirmative defenses based on that agreement dismissed, and any claim of waiver dismissed.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Troy Phillips prays for a judgment against defendants in his favor on the causes of action as follows:

A. Back pay, full benefits and other "make whole" remedies;

B. Front pay and full benefits;

C. Consequential damages to the greatest extent permitted by law;

D. Punitive damages to the fullest extent permitted by law;

E. Attorney's fees and cost of suit to the fullest extent permitted by law.

F. All other remedies which this honorable Court awards.

Dated:   July 9, 2018
         Fairport, New York

                                    S/ EARL THOMAS HALL

                                    _____
                                    Earl Thomas Hall
                                    4 Wenlock Rd.
                                    Fairport, New York 14450
                                    Phone: 585-244-8743
                                    Fax: 888-869-6920
                                    email: ehall@hall-law-firm.com