UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TROY PHILLIPS,<br><br>    Plaintiff,<br><br>v.<br><br>ORLEANS COUNTY, CHARLES NESBITT, JR. in his individual capacity, GERALD GRAY in his individual capacity, DANIEL DONOHUE in his official capacity as President of the Civil Service Employees Association Local 1000, and CIVIL SERVICE EMPLOYEES ASSOCIATION LOCAL 1000, INC.,<br><br>    Defendants. | Case No. 1:18-cv-00752 |

**OPINION AND ORDER GRANTING THE COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
(Docs. 87 & 88)

Plaintiff Troy Phillips brings this action against Defendants Orleans County, Charles Nesbitt, Jr., Gerald Gray, Daniel Donohue, and the Civil Service Employees Association Local 1000, Inc. ("CSEA"), alleging discrimination based on race and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, and the Age Discrimination in Employment Act ("ADEA"). Pending before the court is a motion for partial summary judgment filed by Defendants Orleans County, Charles Nesbitt, Jr., and Gerald Gray (collectively, the "County Defendants") on the issues of ratification and waiver with regard to Plaintiff's race-based hostile work environment, disparate treatment, and retaliation claims.[1] Also pending is Plaintiff's cross-motion for summary judgment to strike the affirmative defenses of waiver and ratification.

---

[1] The County Defendants do not seek summary judgment with regard to Plaintiff's age discrimination claim pursuant to the ADEA in Count VI. *See* Docs. 87 at 2; 87-7 at 33.

Plaintiff is represented by Earl Thomas Hall, Esq. The County Defendants are represented by Heather L. Dechert, Esq. and Michael P. McClaren, Esq. Defendants Daniel Donohue and CSEA are represented by Leslie C. Perrin, Esq.

## I. Procedural History.

Plaintiff filed a Complaint on July 9, 2018; a First Amended Complaint on July 13, 2018; and a Second Amended Complaint (the "SAC") on July 16, 2019. The SAC alleges the following claims: Count I: racially hostile work environment in violation of Title VII against Defendant Orleans County; Count II: disparate treatment on the basis of race in violation of Title VII against Defendant Orleans County; Count III: retaliation in violation of Title VII against Defendant Orleans County; Count IV: violation of 42 U.S.C. § 1981 against Defendant Donohue, in his official capacity, and Defendant CSEA; Count V: violation of 42 U.S.C. §§ 1981 and 1983 against Defendants Nesbitt and Gray, in their individual capacities, and Defendant Orleans County; and Count VI: violation of the ADEA, 29 U.S.C. §§ 621-634, against Defendant Orleans County.

On July 15, 2019, the court issued an Opinion and Order denying the County Defendants' motion to dismiss and denying Defendants Donohue's and CSEA's motion to dismiss. A scheduling conference was held on December 2, 2020, at which the court bifurcated Plaintiff's claims and stayed all discovery unrelated to the issue of whether Plaintiff released his claims through a settlement agreement.

On October 18, 2021, the County Defendants filed the pending motion for partial summary judgment regarding Counts I-III and V of Plaintiff's SAC. (Doc. 87.) Plaintiff opposed the motion on November 15, 2021, and on December 6, 2021, the County Defendants replied. On October 18, 2021, Plaintiff also filed a motion for partial summary judgment to strike the County Defendants' affirmative defenses of waiver and ratification. (Doc. 88.) The County Defendants opposed the motion on November 15, 2021, and Plaintiff replied on December 6, 2021. A hearing was held on January 14, 2022, at which time the court took the pending motions under advisement.

The County Defendants filed a 136-paragraph statement of undisputed facts. (Doc. 87-6.) In response, Plaintiff filed a sixty-nine-page statement of admissions, partial

admissions, and denials. (Doc. 93-1.) Plaintiff further filed a 136-paragraph statement of undisputed facts in support of his motion for partial summary judgment. (Doc. 88-2.) The County Defendants responded with a forty-four-page objection which contained an additional eighty paragraphs of undisputed facts. (Doc. 92-4.) This briefing style is by no means supported by the complexity of the issues raised, which are relatively straightforward and which involve a core set of material facts that are undisputed. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) (observing that a statement of material facts is intended to "streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties"); *see also Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2610613, at *3 (D. Vt. June 11, 2014) ("In light of the voluminous factual record before the court, and the absence of any discernible effort by the parties to narrow the fact[s] . . . before the court, the court will not attempt to set forth all of the undisputed facts but will instead only consider those facts necessary to address the [pending motions.]") (collecting cases).

## II. The Undisputed Facts.

On January 14, 2015, Defendant Orleans County terminated Plaintiff's employment for insubordination and other alleged violations including failure to record time. On or about January 22, 2015, Defendant CSEA, Plaintiff's union, filed a grievance on his behalf protesting his termination. From on or about February 3-9, 2015, Plaintiff attended meetings with CSEA representatives and discussed a potential settlement. On February 9, 2015, in a meeting with CSEA Unit President Ms. Cynthia Troy, Plaintiff signed a written settlement agreement (the "Agreement") purporting to resolve all of his employment-related claims against Defendant Orleans County.

The Agreement is written in non-technical language and is comprised of a two-page, fourteen-paragraph document. It states that Plaintiff will "release the County, which shall discharge it, its legislators, elected officials, successors and assigns, agents, employees, managers, department heads and supervisors from any and all actions, suits or claims, including attorney's fees, against it arising out of the subject matter of

3

[Plaintiff's] employment with the County." (Doc. 87-5 at 10, ¶ 11.) The Agreement also states that Plaintiff "acknowledges and agrees that the Union has fully and fairly represented him in the processing of the above-referenced grievance and in the negotiation of this [A]greement[.]" *Id.* at ¶ 12. In signing the Agreement, Plaintiff acknowledged that he "carefully read each and every provision . . . and that he fully understands all of the terms and conditions of this Agreement." *Id.* at ¶ 13.

"Plaintiff received a copy of the fully-executed Agreement in the mail" within "a couple weeks" after his meeting with Ms. Troy. (Doc. 87-6 at 18, ¶ 120.) He also received a six-month continuation of his health insurance benefits and a check in the amount of $17,500 ($16,863.91 after deductions) from Defendant Orleans County, which he cashed and deposited into his personal bank account. Plaintiff applied for, received, and cashed unemployment benefits following execution of the Agreement. *See id.* at ¶ 125. In late July or August of 2015, after Plaintiff's health insurance and unemployment benefits expired, he contacted an attorney.

On approximately August 19, 2015, Plaintiff "met with [his] attorney related to his claims in this case" and was "informed that he would need to tender back the consideration received for the voidable [A]greement." (Doc. 88-2 at 19, ¶ 107.) On approximately August 27, 2015, Plaintiff filed a charge of illegal employment discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), which was cross-filed with the New York State Division of Human Rights. *See id.* at 21, ¶ 117. In his EEOC complaint, Plaintiff acknowledged that he had signed a "no sue letter" during settlement negotiations wherein he waived his rights, including any Title VII claims. (Doc. 87-4 at 41) (internal quotation marks omitted). Plaintiff, however, alleged that the Agreement failed to advise him of his rights under the Older Workers Benefit and Protection Act (the "OWBPA"). On June 17, 2016, the EEOC "issued a right to sue notice against the [CSEA.]" (Doc. 88-2 at 21, ¶ 118.)

In 2017, after being advised he had to return the money he received under the Agreement, Plaintiff made multiple deposits to his attorney. Approximately nineteen months after being notified of the tender back requirement, "Plaintiff's attorney issued a

4

letter to [Defendant Orleans] County dated March 17, 2017, stating Plaintiff intended to tender back [the consideration received under the Agreement] and requesting an accounting of the benefits provided[.]" (Doc. 87-6 at 19, ¶ 130.) In that letter, Plaintiff's attorney requested the "the name, title[,] and address of the party to whom your client wishes the tender back check to be sent." (Doc. 87-4 at 56.) In response, the County Defendants informed Plaintiff's attorney they "intend[ed] to enforce the release in its entirety" and would not provide an accounting or accept a tender back payment. (Doc. 88-12 at 2.) Plaintiff did not send any funds to Defendant Orleans County in response. At the time of Plaintiff's counsel's tender back offer, Plaintiff had insufficient funds in his counsel's account to tender back even the $17,500. (Doc. 87-6 at 19, ¶ 131.)

On April 25, 2018, "the EEOC issued [its] determination as to Orleans County in which the EEOC, in part, reversed [its] initial determination, finding the waiver [in the Agreement] . . . to be invalid under the [OWBPA]." (Doc. 88-2 at 21, ¶ 119.) On July 9, 2018, Plaintiff filed his Complaint in this court. On July 30, 2019, almost four years after discussing the tender back requirement with his attorney, Plaintiff tendered back payment in the amount of $17,500 to Defendant Orleans County, which included the lump sum payment Plaintiff received but not his six months of health insurance benefits or unemployment benefits. (Doc. 87-4 at 58-59.) Plaintiff's check was returned to him uncashed in August 2019.

### III. Disputed Issues of Fact.

Although the parties agree regarding many of the events that preceded the Agreement, certain facts remain disputed, including whether the totality of the circumstances demonstrate that the Agreement was knowing and voluntary under *Bormann v. AT & T Commc'ns, Inc.*, 875 F.2d 399 (2d Cir. 1989). The vast majority of the disputed facts Plaintiff cites pertain to his representation by Defendant CSEA, and not to the County Defendants. *See Kramer v. Vendome Grp. LLC*, 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012) (holding that a plaintiff alleging a release was voidable on duress grounds "must demonstrate that the difficult circumstances she faces are a result of *the defendant's* actions") (citation omitted) (emphasis supplied). Plaintiff admits that he

5

never communicated directly with the County Defendants regarding the Agreement, which was drafted by CSEA. The County Defendants were also not present when he signed it. He nonetheless claims that Defendant CSEA was acting on the County Defendants' behalf in negotiating the Agreement, although he cites no evidence beyond speculation to support this claim. He likewise cites no evidence that the County Defendants acquiesced in Defendant CSEA's alleged dual representation.

For purposes of ratification and tender back, none of the disputed facts are material. *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (observing that a fact is material if it "'might affect the outcome of the suit under the governing law'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, although disputed issues of fact preclude a resolution of whether the Agreement was enforceable when signed, the court can resolve as a matter of law the issue of whether Plaintiff subsequently ratified it.

## IV. Conclusions of Law and Analysis.

### A. Standard of Review.

The court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez*, 788 F.3d at 39 (quoting *Anderson*, 477 U.S. at 248). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the non-moving party" and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (internal quotation marks omitted). There is no genuine dispute where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The moving party always "bears the initial responsibility of informing the district

6

court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party must come forth with evidence sufficient to allow a reasonable jury to find in [its] favor." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotation marks omitted). "Thus, a nonmoving party can defeat a summary judgment motion only by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Id.* at 166-67 (internal quotation marks omitted) (alterations in original).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted). "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita*, 475 U.S. at 586). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). However, if the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Id.* at 251-52. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Kaytor*, 609 F.3d 537 at 545 (internal quotation marks and emphasis omitted).

**B. Whether Plaintiff Ratified the Waiver of His Title VII and § 1981 Claims Against the County Defendants.**

Plaintiff asserts that he did not execute the Agreement knowingly or voluntarily. Although he concedes that he signed the Agreement, he claims that, in doing so, he did

7

not read or understand it. He seeks to be relieved of the Agreement and to preclude the County Defendants from arguing that he has waived his claims and ratified the Agreement. The County Defendants respond that the Agreement nevertheless remains valid and enforceable against Plaintiff because he ratified the Agreement by continuing to accept its benefits and failing to tender them back in a timely manner.

"In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Courts generally refuse to relieve a party of the consequences of a document which the party has signed but not read. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (observing that, under New York law, "'[a] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents'") (quoting *Brandywine Pavers, LLC v. Bombard*, 108 A.D.3d 1209, 970 N.Y.S.2d 653, 655 (2013)) (alterations in original). Correspondingly, "[w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *U.S. v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994). The parties brief at length whether the Agreement is enforceable under *Bormann*. The court need not resolve this issue because the doctrines of ratification and tender back govern the outcome.

Courts within the Second Circuit "appl[y] the doctrines of ratification and tender-back in determining whether a release is voidable." *Davis v. Eastman Kodak Co.*, 2007 WL 952042, at *6 (W.D.N.Y. Mar. 29, 2007). Although the concepts of ratification and tender back are related, they impose distinct requirements. With respect to ratification, the Second Circuit has explained:

> It is a generally accepted principle that a voidable contract can be cured by ratification through express or implied conduct, but that a person charged with ratification of such a contract must have acted voluntarily and with full knowledge of the facts. . . . With respect to ratification of a release by conduct, the test is whether the releasor, with full knowledge of the material facts entitling him to rescind, has engaged in some unequivocal conduct

8

giving rise to a reasonable inference that he intended the conduct to amount to a ratification.

*Brown v. City of S. Burlington, Vt.*, 393 F.3d 337, 343-44 (2d Cir. 2004) (internal quotation marks omitted); *see also Clark v. Buffalo Wire Works Co., Inc.*, 3 F. Supp. 2d 366, 371 (W.D.N.Y. 1998) ("Ratification is an act by which an otherwise voidable and, as a result, invalid contract is confirmed, and thereby made valid.") (citations omitted). In the context of a release involving Title VII claims, "[r]atification occurs 'at the point that a party learns that his prior agreement not to sue is voidable but continues to accept the benefits of that agreement.'" *Davis*, 2007 WL 952042, at *6 (quoting *Livingston v. Bev-Pak, Inc.*, 112 F. Supp. 2d 242, 249 (N.D.N.Y. 2000)).

"[T]he tender back doctrine concerns actions the employee-plaintiff must take before filing suit." *Id.* It "requires . . . as a condition precedent to suit, that a plaintiff return the consideration received in exchange for a release, on the theory that it is inconsistent to bring suit against the defendant while at the same time retaining the consideration received in exchange for a promise *not* to bring such a suit.'" *Id.* (quoting *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 436-37 (1998) (Thomas, J. dissenting) (emphasis in original)). "Thus, under the tender back doctrine, an employee who obtains extra severance benefits in exchange for a release in favor of the employer must tender the extra benefits back to the employer as a condition precedent to challenging the validity of the release." *Id.* "The tender back doctrine operates not to make the voidable release binding, as does ratification, but rather precludes a party from simultaneously retaining the benefits of the release and suing to vindicate released claims." *Id.* (internal quotation marks omitted).

The Second Circuit has observed "[i]n order to avoid a finding of ratification where consideration has been paid, it is essential that the releasor tender back the sum received." *Brown*, 393 F.3d at 344; *see also Cheung v. New York Palace Hotel*, 2005 WL 2387573, at *4 (E.D.N.Y. Sept. 28, 2005) (observing that, within the Second Circuit, "the rule requiring the return of consideration before a contractual release may be rescinded is controlling"). While some courts have found that a tender back is not required by federal

discrimination statutes, including Title VII, as a condition precedent *to filing suit*,[2] it remains true that "failure to tender back the consideration received under a voidable release can indicate ratification of said release[.]" *Sapio v. Selux Corp.*, 2021 WL 4844274, at *2 (N.D.N.Y. Oct. 18, 2021) (citation omitted).

Upon his receipt of the Agreement, which he signed in February of 2015, Plaintiff "continue[d] to accept the benefits of th[e A]greement" until his attorney made an inquiry regarding tender back in March of 2017, almost two years after informing Plaintiff that the Agreement was voidable. *Livingston*, 112 F. Supp. 2d at 249 (determining that a plaintiff who had neither tendered back nor offered to tender back the consideration received for "almost two years[,]" despite being represented by counsel, ratified the agreement and was "barred from bringing his federal law claims") (citing *Kristoferson v. Otis Spunkmeyer, Inc.*, 965 F. Supp. 545, 548 (S.D.N.Y. 1997)). At the time of the first tender back offer, Plaintiff's attorney's account contained insufficient funds to tender back even the lump sum payment Plaintiff had received. Although Plaintiff now contends that he was "able to borrow" the remaining funds, it is undisputed that he did not do so. (Doc. 93 at 31.) His partial tender back offer was rejected by the County Defendants by letter dated April 3, 2017. Plaintiff made no tender back prior to filing suit or for approximately one year thereafter.

While the tender back doctrine may not bar Plaintiff from filing his claims, an untimely tender back may ratify the Agreement. Based on the undisputed facts in this case, Plaintiff's choice to retain the benefits of the Agreement over a period of years with full knowledge that the Agreement was voidable constitutes ratification as a matter of law. *See, e.g., VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001)

---

[2] *See, e.g., Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427-28 (1998) (holding that a tender back payment was not a prerequisite to filing suit pursuant to the OWBPA and the ADEA); *McClellan v. Midwest Machining, Inc.*, 900 F.3d 297, 308 (6th Cir. 2018) ("We therefore hold that the tender-back doctrine does not apply to claims brought under Title VII[.]"); *Sapio v. Selux Corp.*, 2021 WL 4844274, at *2 (N.D.N.Y. Oct. 18, 2021) (noting that plaintiff's claims of discrimination pursuant to 42 U.S.C. § 1981 and other state law causes of action were not "barred *solely* by the fact that [plaintiff] did not tender back the consideration she received for signing the [r]elease prior to filing suit") (emphasis in original) (footnote omitted).

(determining that a releasing party must "promptly repudiate" the release to overcome ratification and observing that "[d]elays as short as six months" have constitute[d] forfeiture of [a] claim"); *Nicomedez v. AIG*, 2012 WL 5264560, at *5 (S.D.N.Y. Oct. 16, 2012) (granting summary judgment on ratification grounds where plaintiff retained the consideration obtained under a release for over seven months because "[s]uch a period is too long to prevent ratification"); *Livingston*, 112 F. Supp. 2d at 249 (observing that a "key element of ratification" is "the failure of the plaintiff to tender back, or to offer to tender back, the consideration that he received in exchange for executing the release") (citations and footnote omitted).

Plaintiff asserts that the Second Circuit's "prompt repudiation" requirement articulated in *VKK Corp. v. Nat'l Football League* does not apply because it "involve[s] causes of action sounding in [d]uress." (Doc. 99 at 21). However, if "prompt repudiation" is required even in cases involving duress, *a fortiori*, it applies in cases where no duress by the County Defendants is alleged. *See Austin v. Advance Publ'ns, Inc.*, 2017 WL 1232528, at *4 (E.D.N.Y. Mar. 31, 2017) (finding plaintiff asserting Title VII claim ratified a release where she secured counsel but waited seven months to challenge the release, during which she was "no longer under duress and had time to review the documents[,]" because this period was "too long to be considered 'prompt'") (quoting *VKK*, 244 F.3d at 123); *Loksen v. Columbia Univ.*, 2013 WL 5549780, at *6 (S.D.N.Y. Oct. 4, 2013) (concluding plaintiff ratified a release and was barred from bringing Title VII claims where it was "undisputed that [p]laintiff has retained the nine months' salary he received as consideration for waiving his claims against the [d]efendants").

Plaintiff's argument that his filing an EEOC charge asserting voidability of the Agreement under the OWBPA, (Doc. 88-10), a distinct statutory framework, "provided Defendant Orleans County with constructive notice that he considered the settlement agreement to be voidable and that it was his intention to void that agreement[,]" (Doc. 93 at 34), is equally unavailing. When "a plaintiff retains the consideration paid after executing a release, 'filing an EEOC charge does not prevent ratification.'" *Austin*, 2017 WL 1232528, at *4 (quoting *Rivera v. Sovereign Bank*, 976 F. Supp. 2d 270, 289

(E.D.N.Y. 2013)); *see also Davis v. Eastman Kodak Co.*, 2007 WL 8098431, at *3 (W.D.N.Y. July 19, 2007) (finding ratification despite plaintiffs' assertions that they "acted 'as quickly as possible' to challenge [a] release by bringing [their] lawsuit within the EEOC's statutory framework").

Nor does Plaintiff's reliance on the Southern District of New York's 1997 *Kristoferson* decision compel a different result. In that case, the court held:

> [T]his Court will henceforth require that, before a Title VII plaintiff who has previously received benefits for signing a release from such liability can go forward with such an action, the plaintiff must execute a formal undertaking that requires the plaintiff, if the release is later found to be invalid, to return the consideration to the employer, in an amount (including possible interest) and on a schedule and other terms to be determined by the Court at the conclusion of the case, regardless of whether the plaintiff thereafter prevails on her Title VII claim. The Court's theory in promulgating this approach is to place formerly-released plaintiffs at some potential economic risk if they choose to breach the facial terms of the release by bringing Title VII actions, while, on the other hand, not to impose an immediate price to the bringing of such a lawsuit that may prove prohibitive to legitimate victims of discrimination whose very economic circumstances may have contributed to their involuntarily executing a dubious release. In short, the object is to make sure that neither side gets a completely free ride on the expensive conveyance of legal process.

*Kristoferson*, 965 F. Supp. at 549.

In *Davis*, this court evaluated *Kristoferson* and determined that "[w]hile this approach is innovative, it has not been suggested by plaintiffs in response to the instant motion, it has not been endorsed by the Second Circuit, and this [c]ourt declines to adopt it here." *Davis*, 2007 WL 952042, at *9 n.7. After reviewing the policy considerations set forth in *Kristoferson*, the *Davis* court found "the doctrines of ratification and tender back to be controlling[.]" *Id.* at *9. Plaintiff had notice of *Kristoferson* and never proposed its unique course of action as an alternative to a timely tender back. *See Ackermann v. United States*, 340 U.S. 193, 198 (1950) (holding that, in the context of Fed. R. Civ. P. 60(b), strategic decisions made during the course of litigation do not provide a basis for subsequent relief); *see also Austin*, 2017 WL 1232528, at *4 (granting summary judgment on the basis of ratification where plaintiff "retained counsel who would have

explained the significance of the [r]elease and its terms" but then failed to promptly repudiate the agreement). *Kristoferson* is neither controlling nor persuasive, and in any event, is inapplicable to this case.

Because Plaintiff was represented by counsel who advised him of the tender back requirement nineteen months before any tender back was proposed and nearly four years before a partial tender back was made, no rational finder of fact could find that a timely tender back took place. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (observing that summary judgment may be granted where no rational fact finder could find in favor of the non-moving party). Plaintiff's tender back "occur[red] too late to undo the ratification resulting from acceptance and retention of the [benefits.]" *Tung v. Texaco Inc.*, 32 F. Supp. 2d 115, 118 (S.D.N.Y. 1997), *aff'd in relevant part*, 150 F.3d 206, 209-10 (2d Cir. 1998) ("The judgment of the district court is affirmed insofar as it dismissed [plaintiff's] Title VII claims[.]"); *see also Blakeney v. Lomas Info. Sys.*, Inc., 65 F.3d 482, 485 (5th Cir. 1995) ("Retaining the consideration after learning that the release is voidable constitutes a ratification of the release. . . . [A] belated tender, after suit was filed, to return that part of the severance pay that was attributable to [plaintiff's] discrimination claims . . . not only fails to return the status quo, but by any standard is untimely.") Moreover, Plaintiff received six months of healthcare benefits and unemployment compensation which were never tendered back.

"By intentionally retaining the . . . benefits [P]laintiff[] received in exchange for the release, even after [he was] aware of the alleged defects involved in procuring the release, [Plaintiff has] ratified the release[ he] signed." *Davis*, 2007 WL 952042, at *9. The County Defendants' motion for partial summary judgment is therefore GRANTED and Plaintiff's cross-motion to strike the County Defendants' affirmative defenses of waiver and ratification is DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS the County Defendants' motion for partial summary judgment on its affirmative defenses of waiver and ratification with regard to Counts I-III and V of Plaintiff's SAC (Doc. 87) and DENIES Plaintiff's motion for partial summary judgment to strike the County Defendants' affirmative defenses of waiver and ratification (Doc. 88).

SO ORDERED.

Dated this 16th day of June, 2022.

Christina Reiss, District Judge
United States District Court